*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 30, 2020

**BY CM/ECF**
The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States v. Jahvonne Chambers*, S2 20 Cr. 135 (JMF)

Dear Judge Furman:

    The Government writes to oppose Defendant Jahvonne Chambers's request for bail, which was filed on March 29, 2020 (Docket No. 58). In his letter, the defendant requests that the Court temporarily release him under 18 U.S.C. § 3142(i) as a result of the COVID-19 pandemic. Specifically, the defendant argues that his pre-existing asthma diagnosis constitutes a "compelling reason" for release. The defendant also argues that his temporary release is "necessary" to prepare his defense because the Essex County Correctional Facility's restrictions in light of the COVID-19 pandemic have not provided adequate access to counsel. For the following reasons (and for many of the same reasons cited by the Government in its opposition to co-defendant Jacobb Padin's bail application, *see* Docket No. 54), the defendant's request for bail should be denied. The defendant fails to establish a "compelling reason" requiring his immediate release from custody. Meanwhile, multiple compelling reasons—namely, the safety of the community and the defendant's risk of flight—require that the defendant be detained pending trial. The defendant also fails to show that his temporary release would be "necessary" for the preparation of his defense, especially given that a trial date has not even been scheduled in this case.

    **I.**    **Factual and Procedural Background**

    The defendant is charged with participating in the Black Stone Gorilla Gang ("BSGG"), a violent Bloods street gang that has been operating in the New York City metropolitan area and the jails and prisons of New York State since at least 2011. At trial, the Government will prove that BSGG members have been responsible for numerous acts of violence, including at least two murders, six attempted murders, five slashings, three armed robberies, and dozens of physical assaults. Former BSGG members will testify at trial that violence is firmly rooted into BSGG's culture. BSGG members committed acts of violence to join the gang and move up in status within the gang. BSGG members also committed acts of violence against each other as a form of discipline for violating the rules of the gang. The violent nature of BSGG is underscored by the fact that the Government seized five guns in connection with the arrests in this case.

BSGG members also committed serious crimes to make money.  Members of BSGG sold massive quantities of crack cocaine, powder cocaine, heroin, and other dangerous drugs in New York City and locations outside of New York City.  They used and carried guns in support of the gang's drug operations.  Members of the gang also made thousands of dollars by defrauding financial institutions, depositing stolen and counterfeit checks into bank accounts controlled by members of the scheme.  BSGG members were required to pay "kitty dues"—a form of tribute—to higher-ranking members of the gang and BSGG members who were in prison.

The S2 20 Cr. 135 Indictment charges 15 members and associates of the Black Stone Gorilla Gang with a variety of criminal offenses.  The defendant is charged with participating in a racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d) (Count One), and attempted assault with a dangerous weapon in aid of racketeering, in violation of Title 18, United States Code, Sections 1959(a)(6) and 2 (Count Seven).

On March 18, 2020, the defendant was presented before Magistrate Judge Aaron.  Defense counsel sought the defendant's release on bail at the time, which Judge Aaron summarily denied after hearing argument from the parties, including arguments about the defendant's asthma and potential exposure to the coronavirus while in custody.  Following the detention hearing, the defendant did not indicate that he intended to appeal Judge Aaron's decision.  On March 29, 2020, the defendant filed a letter seeking that the Court grant temporary bail under 18 U.S.C. § 3142(i) as a result of the COVID-19 pandemic.

## II.     Applicable Law

A defendant must be detained pending trial if the Government can show by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  A defendant must be detained if no condition or combination of conditions can "reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(c)(1)(B).  In making this determination, the Court must consider: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence…or involves…a…firearm;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person;" and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C § 3142(g).

The Bail Reform Act also permits the "temporary release" of a defendant to the custody of the United States Marshals Service ("USMS") or "another appropriate person" if the Court determines that release is "necessary for the preparation of the person's defense or for another compelling reason."  18 U.S.C. § 3142(i).  "This provision has been used sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries."  *United States v. Hamilton*, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (Garaufis, J.) (citing *United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993)).  In *Scarpa*, for example, the Court allowed a defendant to be released to the custody of the United States Marshals Service at a hospital to receive end-of-life care for terminal AIDS that could not be

provided by the Bureau of Prisons.  815 F. Supp. at 89-90.  Similarly, in *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D. P.R. 2002), the Court allowed a defendant to be temporarily released to the custody of his family to recover from a series of gunshot wounds sustained during a shoot-out with law enforcement officers prior to the defendant's arrest when the Bureau of Prisons would not accept the defendant due to the severity of his injuries.  *See id.* at 145; *see also United States v. Birbragher*, 2008 WL 1883504, at *3 (N.D. Iowa Apr. 25, 2008) (denying temporary release for gall bladder disease when prison was willing and able to provide defendant with appropriate medical care).

### III.  Analysis

#### A.  Bail Should Be Denied Based on the Factors in 18 U.S.C. § 3142(g)

At the outset, the defendant does not appear to seriously dispute that Judge Aaron correctly detained him pending trial pursuant to the factors set forth in 18 U.S.C. § 3142(g).  Nor, on this record, could he.  At trial, the Government will prove that the defendant has been an active BSGG member since at least 2017.  As part of his participation in BSGG, the defendant committed numerous acts of violence with other members of the gang, including at least two gunpoint robberies during which the defendant served as the gunman and a commercial burglary of an office building.  Count Seven also specifically charges the defendant with participating in an attempted slashing of another inmate at a New York City Department of Corrections ("NYCDOC") facility in the Bronx on or about August 27, 2018.  At trial, the Government will present recorded calls establishing that the defendant was ordered by co-defendant Alexander Arguedas and other high-ranking BSGG members to carry out the slashing.  NYCDOC employees then apprehended the defendant after he attempted to slash another inmate and was found in possession of a scalpel.

The defendant's criminal history further establishes that the defendant has either been unwilling or unable to refrain from committing crimes while released in the community, even when supervised by the courts.  The defendant's criminal history dates back to June 2013 and includes multiple convictions for serious criminal offenses, as well as crimes committed while on pretrial release, parole, and even while in custody.  In or around June 2013, the defendant was arrested and charged with Assault in the Second Degree and Criminal Contempt.  The defendant ultimately pleaded guilty to Attempted Assault in the Third Degree and was sentenced to 90 days' imprisonment.  *Just weeks after being released from custody*, the defendant was arrested again on November 15, 2013 and charged with Robbery in the Third Degree.  The defendant ultimately pleaded guilty to Attempted Robbery in the Second Degree in December 2014 and was sentenced to 42 months' imprisonment and 18 months of post-release supervision.  *While on pretrial release from his November 2013 arrest*, the defendant was arrested twice—in March 2014 for Criminal Mischief in the Third Degree and again in April 2014 for Assault in the Second Degree.  *While in custody*, the defendant was caught in possession of dangerous contraband in June 2017.  The defendant pleaded guilty to Attempted Possession of Contraband in Prison and was sentenced to 18 months to 3 years' imprisonment.  The defendant was released to parole in September 2017, which is when he began engaging in the criminal conduct alleged in the Indictment—serving as the gunman in multiple gunpoint robberies, participating in a burglary with members of a violent gang, and carrying a gun on multiple occasions.  All of this conduct occurred while the defendant was on parole.  In July 2018, the defendant was arrested for Grand Larceny in the Third Degree

and ultimately pleaded guilty to Unauthorized Use of a Vehicle, resulting in a sentence of four months' imprisonment. *While in custody*, the defendant committed the attempted slashing of a rival gang member charged in Count Seven of the Indictment. Based on this record, the Court cannot be reasonably assured that the defendant will adhere to proposed bail conditions here. Quite to the contrary, the defendant has repeatedly violated the conditions of his pretrial and post-conviction release and cannot be trusted to obey the Court's orders if released from custody here.

Finally, the defendant is also a significant flight risk, especially in light of the nature of the charges against him and the penalties that the defendant faces after trial. Based on the robberies alone, the defendant faces a base offense level of 26, and his significant criminal history appears to place him in at least Criminal History Category V. This correlates to a Guidelines Range of 110-137 months' imprisonment. And the evidence that the defendant faces at trial is overwhelming, including recorded calls from the defendant's NYCDOC phone account in which the defendant agreed to commit the attempted slashing in Count Seven, and witness testimony establishing that the defendant was found in possession of a scalpel after attempting to slash another inmate. Given this combination of the potential penalties and the strength of the evidence, the defendant faces tremendous incentives to flee. *See United States v. Sabhani*, 493 F.3d 63, 76 (2d Cir. 2007) (observing that strong motives to flee exist where the evidence is strong and the potential penalties are severe).

In sum, the defendant poses a significant danger to the community and risk of flight that cannot be mitigated with any bail conditions set by the Court. As a result, the defendant cannot be released under the factors set forth in 18 U.S.C. § 3142(g).

### B. The Defendant Has Not Demonstrated a "Compelling Reason" for Temporary Release

Rather than arguing that he should be released under the factors set forth in 18 U.S.C § 3142(g), the defendant instead suggests that that his preexisting asthma diagnosis and the COVID-19 pandemic represent a "compelling reason" for his temporary release until the pandemic has ended. *See* Docket No. 58. The defendant also argues that the Essex County Correctional Facility—where the defendant is currently housed—is unprepared for the COVID-19 pandemic and has failed to provide him with adequate medical care. As further discussed below, the Government respectfully submits that this pre-existing health condition does not constitute a "compelling reason" for temporary release.

At the outset, information and documentation from the Essex County Correctional Facility refutes the defendant's assertion that the prison has been unable to provide proper medical care to inmates. Quite to the contrary, the Essex County Correctional Facility has been taking significant precautions to ensure inmate safety during the COVID-19 pandemic, including, among other things: health checks, quarantine, and twice-a-day temperature checks for all newly confined inmates/detainees for 14 days; health screening for all staff and civilians who enter the facility; modified recreation time and kitchen schedules to promote social distancing; the installation of a hotel-like structure to increase space; increased cleaning and disinfection, including the hiring of additional staff for cleaning and sanitizing; and special protocols for any inmates who may be compromised as a result of age or underlying health conditions, including daily monitoring and a

plan to separate at-risk inmates from the rest of the population if needed.[1]  On March 27, 2020, the Director of the Essex County Correctional Facility Alfaro Ortiz issued a sworn affidavit summarizing in great detail the comprehensive measures that have been taken by the facility to keep inmates safe during the pandemic.  *See* Affidavit of Alfaro Ortiz, attached hereto as Exhibit A.  In short, it is simply untrue that the Essex County Correctional Facility is unwilling or unable to address COVID-19, and there is no cause to believe they are doing worse at it than the general population of the City, where people continue to violate shelter-in-place directives and flood area hospitals.

The defendant also argues that the Essex County Correctional Facility has failed to provide him with proper medical care or an asthma inhaler.  (Docket No. 58 at 8-9).  To the Government's knowledge, this is also not true.  In response to the defendant's bail application, the United States Marshals Service reached out to representatives at the Essex County Correctional Facility, who confirmed that the defendant is currently in possession of an inhaler.  *See* Email Exchange dated March 30, 2020, attached hereto as Exhibit B.

The defendant next asserts that his pre-existing asthma diagnosis makes him particularly at risk to contract a life-threatening case of COVID-19 while at the Essex County Correctional Facility.  But the defendant has provided far from adequate substantiation for this argument.  The defendant has not provided information regarding, for example, the severity of his diagnosis, treatment he has received previously, any prior hospitalizations as a result of his asthma, or the frequency and last date that the defendant suffered an asthma attack.  Perhaps more to the point, the defendant has not provided any data or evidence regarding how similarly situated patients—25-year old males with an asthma diagnosis—have fared when they contract COVID-19.  Latest statistics indicate that more than 25 million Americans have asthma, and every patient's diagnosis can vary in terms of severity and risk factors.[2]  Nor has the defendant argued that, if evaluated, a medical professional would find that the defendant is not otherwise medically fit for confinement because of a current need for inpatient medical treatment.  *See Scarpa*, 815 F. Supp. at 89-90 (granting release under 18 U.S.C. § 3142(i) where the BOP was unable to provide end-of-life AIDS medical care to the defendant).  Based on this record, the defendant has failed to demonstrate a "compelling reason" making it necessary for the defendant to be released from pretrial detention at this time.  As further discussed below, numerous courts both inside and outside this District have similarly found that a defendant's pre-existing health conditions do not constitute a "compelling reason" for release under 18 U.S.C. § 3142(i) even in the midst of the COVID-19 pandemic.

### C. The Decisions the Defendant Cites Are Not Relevant to the Defendant's Factual Circumstances.

Finally, the cases that the defendant cites in support of his submission are not relevant to the defendant's factual circumstances.  (Docket No. 58 at 7).  For example, the defendant cites

---

[1] *See* https://patch.com/new-jersey/newarknj/more-coronavirus-essex-county-prison-activists-keep-outcry (last accessed on March 27, 2020).

[2] *See* https://www.aafa.org/asthma-facts/ (last accessed on March 27, 2020).

Hon. Jesse M. Furman                                                                                                    Page 6
March 30, 2020

Magistrate Judge James Orenstein in the Eastern District of New York, who ruled that remanding a new arrestee risked introducing COVID-19 into the prison population. *See* Docket No. 58 at 7 (citing *United States v. Raihan*, 20-CR-68 (BMC) (Mar. 12, 2020)). The concern that animated Judge Orenstein's decision does not exist here because the defendant is already housed at the Essex County Correctional Facility; there is no risk that he will introduce new illness into the facility. The defendant also cites to Judge Engelmayer's decision in *United States v. Jones*, 18 Cr. 834 (PAE) (Docket No. 440), where the Court indicated that it would have sentenced the defendant to home confinement had it known at the time of sentencing that the COVID-19 pandemic would reach New York City. Importantly, however, Judge Engelmayer did not make any findings with respect to 18 U.S.C. § 3142(i) in *Jones* because the defendant had already pleaded guilty pursuant to a cooperation agreement and had been sentenced. Judge Engelmayer did not make any findings as to how it would have ruled if the defendant had still been on pretrial detention.

The defendant also cites Judge Nathan, who recently released a defendant after finding that (a) the strength of the case against him was weaker than initially believed, and (b) the defendant would be unable to prepare for a March 25, 2020 hearing while in custody. *See United States v. Stephens*, 15-CR-95 (AJN) (Mar. 18, 2020). Of note, Judge Nathan expressly declined to rule based on health concerns. *See* Opinion at 6 n.3 ("The Defendant also argues that the current public health crisis itself provides an additional compelling reason necessitating his release for all the reasons already articulated above. … The Court need not decide this additional factor here because its determination that release is necessary for the preparation of the Defendant's defense is sufficient under § 3142(i)."). Neither of Judge Nathan's stated reasons for granting bail is present in this case: (a) the evidence against the defendant remains overwhelming, and (b) trial has not even been scheduled in this case (not one week away like the hearing in *Stephens*), so the urgency of immediate preparation is much less.

In this regard, Judge Nathan's ruling is consistent with a growing body of decisions in this District rejecting applications for bail based on generalized assertions relating to COVID-19. *See United States v. Bradley*, 19 Cr. 632 (S.D.N.Y. Mar. 25, 2020) (Daniels, J.) (denying bail application for inmate detained in MCC on controlled substances and firearm charges who had recently experienced a stroke and had high blood pressure); *United States v. Rivera*, 20 Cr. 6 (S.D.N.Y. Mar. 25, 2020) (Rakoff, J.) (denying bail application for inmate detained in MCC on controlled substance charge who had a childhood history of asthma); *United States v. White*, 19 Cr. 536 (S.D.N.Y. Mar. 25, 2020) (Castel, J.) (denying bail application for inmate detained at Valhalla on controlled substance and Hobbs Act charges with history of whooping cough); *United States v. Alvarez*, 19 Cr. 622 (S.D.N.Y. Mar. 24, 2020) (Cote, J.), ECF No. 17 (denying bail application for inmate detained in MCC on controlled substances charges who had been diagnosed with Hepatitis B); *United States v. Acosta*, 19 Cr. 848 (S.D.N.Y. Mar. 25, 2020), ECF No. 14 (Buchwald, J.) (denying bail application for inmate detained in MCC that "reli[ed] mainly on a form letter proffering general reasons to release inmates because of the spread of the COVID-19 virus); *United States v. Decker*, 20 Cr. 104 (NSR) (S.D.N.Y. Mar. 27, 2020) (Davison, M.J.) (denying bail application for inmate with pre-existing heart and liver issues and acute asthma); *United States v. Herman Steward*, 20 Cr. 52 (DLC) (S.D.N.Y. Mar. 26, 2020) (Cote, J.) (denying bail application for 62-year old inmate and finding no reason that the defendant's release would lessen the risk to his health presented by COVID-19); *United States v. Sadi Fofana*, 19 Cr. 447 (DLC) (S.D.N.Y. Mar. 30, 2020), ECF No. 66 (denying bail pending sentencing for inmate with

asthma). *But see United States v. Perez*, 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (ordering release of defendant with serious progressive lung disease and other significant health issues in light of COVID-19 under 18 U.S.C. § 3142(i)).

Courts outside of this District have similarly found that a defendant's pre-existing health conditions alone are not sufficient to establish a "compelling reason" justifying temporary release at this stage in the COVID-19 pandemic. These courts have weighed a number of factors, including precautions by the prisons to mitigate the risk of outbreak, the current spread of COVID-19 cases in the prisons, and the public health and safety risks that the defendant's release would pose. *See Hamilton*, 2020 WL 1323036, at * 2 (denying temporary release as a result of the COVID-19 pandemic to a defendant who was within a "higher-risk cohort should he contract COVID-19" based on advanced age and history of stroke and heart attack); *United States v. Clark*, 2020 WL 1446985, at *8 (D. Kansas Mar. 25, 2020) (denying temporary release as a result of the COVID-19 pandemic to a defendant with diabetes). In *Clark*, for example, the Court acknowledged that the defendant's status as a diabetic put him at an increased risk of experiencing severe illness if he were to contract COVID-19. *Id.* at *8. But the Court found that the defendant's arguments about the risk of outbreak at the detention facility were too speculative, and releasing the defendant would only create additional complications, including contamination risks associated with travel, reduced access to quality healthcare, placing pretrial services officers at risk, and potentially placing law enforcements officers at risk in re-apprehending a defendant with a high-risk of violating bail conditions. *Id.* As in *Hamilton* and *Clark*, the Court should similarly find that the COVID-19 pandemic at this time does not justify the wholesale release of every inmate with a prior health condition, especially those who should otherwise be detained under the Bail Reform Act on the grounds of dangerousness to the community and risk of flight. *See United States v. Acosta*, 19 Cr. 848 (NRB) (S.D.N.Y.) (Doc. No. 14 at 2) (March 25, 2020) ("[A]cceptance of the argument that this defendant should be released given the COVID-19 virus would logically result in the wholesale release of inmates.").

Finally, the defendant does not appear to seriously argue that temporary release is necessary here for the preparation of his defense. The defendant was just arrested, and an initial conference is currently scheduled for May 4, 2020. This is not a case, like *Stephens*, where there is an impending hearing or trial in a matter of days. Additionally, the defendant acknowledges that the Essex County Correctional Facility remains open for legal in-person visits through a window (Docket No. 58 at 9)—arguably greater access to counsel that the defendant would have if released, under the circumstances. Efforts are underway to improve attorney-client access issues at all pretrial detention facilities in light of COVID-19. The Court should allow those efforts to continue, while at the same time protecting the community from the violence the defendant has shown himself willing and able to engage in.

\* \* \* \* \*

Hon. Jesse M. Furman  Page 8
March 30, 2020

      For reasons set forth above, the Government respectfully submits that the Court should deny the defendant's request for bail.

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney

            By:     /s/ Andrew K. Chan
                      Andrew K. Chan / Danielle R. Sassoon
                      Brandon Harper / Jaclyn S. Wood (SAUSA)
                      Assistant United States Attorneys
                      Southern District of New York
                      (212) 637-1072 / 1115 / 2209

cc:     Counsel of record (by CM/ECF)